NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0448n.06

Case No. 17-5059

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 28, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| JUAN JUAREZ-PISENO, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |

Before: SUTTON, McKEAGUE, and THAPAR, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant Juan Juarez-Piseno pled guilty to one count of reentering the United States illegally. At sentencing, the district court imposed a guideline enhancement after determining that he had obstructed justice. Specifically, the court found that Juarez-Piseno had misled a state court so that he could receive orders expunging earlier convictions and then used the orders to challenge his presentence report in this case. Undisputedly, Juarez-Piseno presented the district court with ill-gotten orders. He argues on appeal, however, that the district court could not find that he *willfully* misled it or the state court that issued the orders. For the following reasons, we disagree and affirm.

I

During the 1990s, Juarez-Piseno racked up two domestic-assault convictions in California. After his second conviction, he was deported to his native Mexico. He later returned to the United States illegally and was arrested in Nashville, Tennessee. In May 2016, he was

indicted on one count of illegal reentry. *See* 8 U.S.C. §§ 1326(a), (b)(2). He pled guilty at a hearing in early August, and the district court set a date for sentencing in November.

Facing his new charge, Juarez-Piseno came to regard his old criminal record as a liability. So, in August, he asked his ex-girlfriend to find an attorney in California to get his two domestic-assault convictions expunged. She found Jeffrey A. Tenenbaum, a Merced County defense attorney.

Tenenbaum got to work. In late August, he contacted Juarez-Piseno's Tennessee counsel, explained that he was working on expungement, and asked for any information counsel had related to Juarez-Piseno's criminal record. Counsel responded by sending Tenenbaum the pretrial services report that the federal probation office had prepared following Juarez-Piseno's May indictment. After receiving the report from Tennessee counsel, Tenenbaum filed petitions for expungement on Juarez-Piseno's behalf. Tenenbaum went to a brief hearing on the petitions at the county court and secured the expungement orders. He then sent them along to Tennessee counsel in early October.[1]

Tennessee counsel relied on Tenenbaum's work in Juarez-Piseno's sentencing position. When the federal probation office prepared a presentence report using Juarez-Piseno's California convictions to increase his guideline range, Tennessee counsel objected. He asserted that the expungement orders meant that Juarez-Piseno's convictions should no longer count against him.

The Government immediately identified a problem with this challenge, however. Under the expungement law identified in the orders, California Penal Code § 1203.4, a defendant cannot obtain relief if he is "then . . . charged with the commission of any offense." Juarez-

---

[1] The Government points out that dismissal under this California code provision might not really count as "expungement." We refer to the process as expungement for simplicity's sake only.

Piseno was indicted in May 2016. The expungement orders were from September 2016. Thus, he was facing criminal charges when he obtained the orders. Ergo, he should not have received them.

Juarez-Piseno's Tennessee counsel dropped his challenge after seeing the Government's response. But the timeline made the Government suspicious. It asked the district court to delay the sentencing hearing so it could consider whether Juarez-Piseno had tried to mislead the court. The court granted the motion and pushed the sentencing hearing back to January 2017.

The Government ultimately decided that Juarez-Piseno had procured the expungements in bad faith. In December, it requested that Juarez-Piseno receive an additional two-level enhancement in his guideline calculation to reflect the bad orders.[2] The Government's request relied on U.S.S.G. § 3C1.1, which requires a guideline increase for obstruction of justice. The provision says, in relevant part, that a defendant's offense level must increase if he "*willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction[.]" U.S.S.G. § 3C1.1 (emphasis added).

To support its request, the Government attached the petitions which Tenenbaum filed on Juarez-Piseno's behalf with the California court. Both were filed under penalty of perjury. Both falsely represented that Juarez-Piseno was not facing any criminal charges. But they were only signed by Tenenbaum, not Juarez-Piseno.

---

[2] The Government also submitted that Juarez-Piseno should be denied a two-level decrease in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The district court agreed. Juarez-Piseno does not argue on appeal that denying him this decrease constituted an error apart from the determination that he obstructed justice. Thus, because we hold that the district court did not err in finding that Juarez-Piseno obstructed justice, we leave its decision to deny him the acceptance-of-responsibility decrease undisturbed.

The Government's request narrowed the sentencing hearing's focus to one issue: whether Juarez-Piseno *willfully* misled the courts. Two Merced County district attorneys testified about the perfunctory way in which California courts issue expungements, as well as to Tenenbaum's familiarity with the county court. But Juarez-Piseno and his ex-girlfriend were the primary witnesses. The two claimed a limited role in the expungement process and no familiarity with its requirements. They testified that they only told Tenenbaum that Juarez-Piseno was "arrested for reentry," assuming he would know it was a criminal matter. For his part, Juarez-Piseno said that he only spoke to Tenenbaum once and was not asked about whether he was facing a criminal charge or civil immigration proceedings. Juarez-Piseno also testified that he never saw the petitions Tenenbaum filed, or the resulting orders, until the sentencing hearing itself.

The court ultimately concluded that the Government had proved by a preponderance of the evidence that Juarez-Piseno had acted willfully. It reasoned that Juarez-Piseno and Tenenbaum most likely discussed that Juarez-Piseno did not qualify for expungement but that the state court would address his request in a perfunctory manner. Then, the district court reasoned, the two likely thought no one would question the orders once Juarez-Piseno presented them in federal court.

In reaching its decision, the court made several factual findings, including credibility determinations. First, it found that Tenenbaum knew from the pretrial services report furnished by Tennessee counsel that Juarez-Piseno was facing federal charges. Second, it found it more likely than not that Juarez-Piseno and Tenenbuam discussed that the county court would review the petitions in a perfunctory manner and that no one would likely check for pending federal charges. Further, the court determined it was likely that they thought no one would question the orders once they obtained them. Finally, the court disbelieved Juarez-Piseno's testimony that he

did not know that Tenenabum lied on the petitions, or, alternatively, that he only avoided learning about what Tenenbaum was doing as a ploy to retain plausible deniability.

Factoring in the obstruction enhancement, the court calculated Juarez-Piseno's final guideline range to be 21 to 27 months. It then sentenced him to a below-guideline term of 20 months' imprisonment. Juarez-Piseno now appeals that sentence, arguing that the court lacked sufficient evidence to conclude that he willfully obstructed justice.

## II

The Government bears the burden to establish facts supporting an enhancement under U.S.S.G. § 3C1.1 by a preponderance of the evidence. *United States v. Hoffman*, 982 F.2d 187, 191–92 (6th Cir. 1992). We review the court's factual findings for clear error and its legal conclusions de novo. *United States v. Henry*, 819 F.3d 856, 872 (6th Cir. 2016).

## III

Juarez-Piseno argues that the district court erred in finding that he willfully obstructed justice. This challenge turns on one factual finding: that Juarez-Piseno knew he did not qualify for expungement. Everyone agrees that if Juarez-Piseno knew he received the orders through misrepresentation, this would constitute obstruction. *Cf.* U.S.S.G. § 3C1.1 cmt. app. n.4 (B), (C), (F), (G), (H) (describing various ways a defendant can commit obstruction through misrepresentations to government officials). If he believed in good faith that he qualified for the expungement orders, however, he likely lacked the culpable mental state necessary for § 3C1.1 to apply.

We see no clear error in the court's finding that Juarez-Piseno knew he should not have received the orders. The timeline and circumstances supported this inference. Juarez-Piseno hired Tenenbaum to pursue expungement after being charged. The two discussed the matter

before the petitions' filing. The expungement statute and the petitions stated that any pending charges would disqualify him. One can reasonably infer that any discussion between Juarez-Piseno and a lawyer experienced in this area, like Tenenbaum, would cover one of the few express limits on Juarez-Piseno's ability to pursue expungement: pending criminal charges. That Tenenbaum knew Juarez-Piseno had been arrested and detained strengthens the inference that he would have discussed this issue with Juarez-Piseno.

Juarez-Piseno protests that the court could not reasonably draw an inference that he knew he did not qualify for expungement. He asserts that the evidence supports a different, plausible story: that he trusted Tenenbaum, who ripped him off through either fraud or incompetence. Certainly, this could have happened—that Tenenbaum even filed the expungement petitions despite having a report on Juarez-Piseno's pending federal charge shows him to be either dishonest or careless here.

Ultimately, however, the district court found this story unconvincing. It determined that Tenenbaum and Juarez-Piseno knew that Juarez-Piseno was ineligible for expungement and that the two, more likely than not, colluded to file a bad petition. To do so, the court relied heavily on credibility determinations. We generally defer to the trial court on such determinations. *See United States v. Roche*, 321 F.3d 607, 609 (6th Cir. 2003).

The credibility determinations here, while not demanded by the evidence, were not clearly erroneous. Besides having the chance to observe Juarez-Piseno's demeanor, the district court relied on its common sense and experience with attorney-client interactions to weigh his testimony. For example, the court appeared skeptical that Tenenbaum would never ask whether Juarez-Piseno was detained on a criminal or civil immigration matter. Further, the court seemed to think it was farfetched that Juarez-Piseno never received information about the filings or the

orders. The interactions all seemed to deviate too far from normal client-attorney interactions for the court to find plausible.

Instead, to the court, the testimony indicated that Juarez-Piseno likely knew that a pending charge made him ineligible for the orders—whether he knew this from the beginning or after conversations Tenenbaum. Although Juarez-Piseno may have told the truth about what he knew, we see no clear error in the district court's determination that he did not.

IV

Proving knowledge—or willfulness based on knowledge—almost always depends on inferences drawn from circumstantial evidence. The Government presented a less-than-airtight case here. But the district court relied on its common sense and experience to draw inferences from the evidence. And it was entitled to do so. *See* 1 Leonard B. Sand et al., *Modern Federal Jury Instructions* ¶ 5.02, Instr. 5-4 (2017) ("You should consider the evidence in light of your own common sense and experience, and you may draw reasonable inferences from the evidence."). Perhaps Tenenbaum alone caused this mess for Juarez-Piseno. But we cannot reverse the district court on this record.

For the foregoing reasons, we affirm.